## Heinemann's Appeal.

1. The general rule is that the father is entitled to the custody of his infant children but it is a mistake to suppose that the father has an absolute natural right to the custody of the infant.

2. When a court is asked to appoint a guardian of the person of a child, it will investigate the circumstances and act according to a sound discretion, the primary object being the good of the child.

3. Under the Act of May 4th 1855 the Orphans' Court may appoint a guardian for a child, its mother being dead, whose father shall for any cause neglect or refuse to provide for it. Where the petition therefor is substantially within the words of the statute, it is enough to bring it within the jurisdiction of the court.

4. It appeared that a father neglected to provide medical treatment for his wife and three children, all of whom died: *Held*, that the court properly appointed a guardian for the two remaining minor children.

November 4th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, and STERRETT, JJ. PAXSON and GREEN, JJ., absent.

Appeal from the Orphans' Court of *Allegheny county:* Of October and November Term 1880, No. 229.

Appeal of Charles Heinemann from the decree of the court in the matter of the petition of Catherine Reineman, praying for the appointment of a guardian for the two minor sons of said appellant.

The petition of Catherine Reineman set forth that she is the maternal grandmother of Osmar and Eugene Heinemann, who are minor children of Charles Heinemann; that the said Charles Heinemann, by reason of indolence, ignorance, stubbornness, or some other cause unknown to your petitioner, has neglected and refused to provide for his children; that Matilda Heinemann, the mother of said children, is dead. The petitioner therefore prays the court to appoint a guardian for said Osmar and Eugene Heinemann, to perform the duties provided for by the Act of Assembly, &c.

Charles Heinemann filed an answer to this petition denying the allegations of the petition. Testimony was then taken before the Orphans' Court, whereby it appeared that in December 1879, the respondent had a wife and five children; that on the 22d of said month the oldest child, about nine years of age, died of diptheria; that on the 27th of the same month the wife of respondent had died; that shortly thereafter a second child died, and that some months thereafter the youngest of the children had died, all of the same disease. It appeared also that during the sickness of his wife and children respondent had refused to call in a physician to attend them, or to provide any medical treatment for them except that practised by himself, called the Bannscheidt system, which consisted in pricking the skin of the patient on different parts of the body with an instrument composed of

about thirty needles, and operated with a spring, and then rubbing the parts thus pricked with an irritating oil. It was also shown that the respondent was in indigent circumstances, and that the minors had to be supported out of their own estates.

The third section of the Act of May 4th 1855, Pamph. L. 430, Purd. Dig. 411, under which the proceeding was instituted, is as follows:

" Sect. 3. Whensoever any husband or father, from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his child or children, the mother of such children shall have all the rights and be entitled to claim, and be subject to all the duties reciprocally due between a father and his children, and she may place them at employment, and receive their earnings, or bind them to apprenticeship, without the interference of such husband, the same as the father can now do by law: Provided always, that she shall afford them a good example, and properly educate and maintain them according to her ability; and provided, that if the mother be of unsuitable character to be intrusted as aforesaid, or dead, the proper court may appoint a guardian of such children, who shall perform the duties aforesaid, and apply the earnings of such children for their maintenance and education."

The court entered a decree appointing a guardian for the persons of the minors from which this appeal was taken. .

*Barton & Sons*, for appellant.—The court had no jurisdiction, because the petition did not aver specifically some act of commission or omission on the part of respondent to justify taking from him the custody of his children. The evidence did not sustain the allegations of the petition.

*Kennedy & Doty*, for appellee.—The Orphans' Court has general jurisdiction of the matter: Story's Eq. Jur., sect. 1341, 10th ed. 595; White & Tudor's Lead. Cas. in Eq., vol. 2, part 2, p. 1416.

The Act of Assembly of March 29th 1832, establishing our Orphans' Court, amongst other provisions has the following:

" Sect. 5. The Orphans' Court of each county shall have the care of the persons of minors resident within such county, and of their estates, and shall have power to admit such minors, when and as often as there shall be occasion, to make choice of guardians, and to appoint guardians for such as they shall judge too young or otherwise incompetent to make choice for themselves."

Here, then, we have the jurisdiction of the court fully shown. First, in its general equity powers. Then, by the express provision of the Act of 1832, above quoted, and then, as though it might be feared, all cases were not covered or embraced in the powers of the court or under its control, the Act of 1855 was

15 NORRIS—8

passed providing whensoever any husband or father, from drunkenness, profligacy or other cause shall neglect or refuse to provide for his child or children, &c., the court may appoint a guardian of such child or children. There can be no question as to the jurisdiction of the court; the only one being as to the time and circumstances of its exercise. Upon this we cite In re Goldworthy, 19 Moak 215 and notes and cases there cited; Cowls *v.* Cowls, 3 Gilman 436; Garrer *v.* Gordon, 41 Ind. 92; Ex parte Waldron, 13 Johns. 418; United States *v.* Green, 3 Mason 482; Commonwealth *v.* Addicks, 2 S. & R. 175; Commonwealth *v.* Barney, 29 Leg. Int. 317; Commonwealth *v.* Smith, 1 Brewst. 547; Commonwealth *v.* Nutt, 1 Bro. 143; Commonwealth *v.* Bigelow, 1 Leg. Chron. 291.

Mr. Justice TRUNKEY delivered the opinion of the court, November 15th 1880.

The general rule is, that the father is entitled to the custody of his infant children, that right growing out of his obligation to maintain and educate them. But this is not on account of any absolute right in the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector, both for maintenance and education. It is a mistake to suppose that the father has an absolute, vested right to the custody of the infant: United States *v.* Green, 3 Mason 482. When a court is asked to appoint a guardian of the person of a child, it will investigate the circumstances and act according to a sound discretion, the primary object being the good of the child.

Under the Act of 1855, Pamph. L. 430, the Orphans' Court may appoint a guardian for a child, its mother being dead, whose father shall, for any cause, neglect or refuse to provide for it. After a full hearing that court appointed a guardian of the persons of the appellant's children, which act is alleged to be error. Objection is now made that the petition did not aver specifically any act of commission or omission on the part of Charles Heinemann, to justify a decree taking from him the guardianship of his children; but in the court below he answered, without suggesting a defect, and the case was heard on its merits. The petition sets out enough to bring it within the jurisdiction of the court, being substantially in the words of the statute.

These children are aged respectively eight and five years, and are too young to be consulted respecting their guardianship. They have some estate, and it appears to be necessary to support them out of it. That their father is in indigent condition is no reason for depriving him of the care and society of his children, if he is a suitable person to have their custody. Unless in a matter of importance they would likely be injured if in his charge, he should

have them, even if unable to maintain and educate them without an allowance from their estates. Yet his inability to support them must be considered with other facts. It is not suggested that the guardian appointed is in any way unfit for the duties; nor that he denies the father the right of visiting his children; nor that they are not in a proper place for their education. The appellant alleges that he "found out on the hearing that he was guilty of no particular dereliction of duty as a father, as to the two boys named in the petition, but that his supposed offence · consisted in the fact that he had not entire faith in the infallibility of the old school of physicians." He further says that the height of his offending lies in the fact that he is a convert to the exanthematic method of healing, discovered by Dr. Carl Baunscheidt. If the decree was based on that cause it was a grave mistake, one which we are not satisfied the court committed.

An examination of the testimony shows that the appellant's conduct towards his family must have been the moving cause for the decree. While the evidence reveals that he had no faith in allopathic physicians, it also reveals that he had neglected to call any others for his wife and three children who had died within less than seven months prior to the hearing. He may have been an affectionate husband and father, and have done what he thought was best, yet according to the evidence they were shamefully neglected as regards medical treatment. His oldest child was the first to die, after having been very sick for several days, but he sent for no physician. For the others he employed no physician at all, except allopathic, and did not call them till death was at the door. He himself practiced the exanthematic treatment on his sick wife and children, although he makes no pretensions as a practising physician, and says, through his counsel, that he is a simple journeyman mechanic. When the physicians were called their directions were disregarded, but probably that made little difference, for they were called so late. There were two practising physicians, . Charles and Leithead, in Pittsburgh, as appellant informs us, who use the mode of treatment he believes in, but he called neither. Doubtless, he thinks, the Baunscheidt panacea as good in his own hand as any other. He has used it on his two surviving children, and should they become ill and he have opportunity, he would be as likely to apply the treatment to them as he was to those which are dead, and as unlikely to call any physician, of any school, qualified for his business. His own testimony shows no change in his mind as to the medical treatment of his family. Nor does it appear that he so plies his trade as to be able to provide for his children, but on the contrary, he expects the guardian of their estates to furnish means for their maintenance.

Upon the whole case we are not convinced that the court erred in making the decree. ·

Decree affirmed, and appeal dismissed at costs of appellant.