416 A.2d 512

**Mary ELLERBE, Appellant,**

v.

**Edward HOOKS.**

Supreme Court of Pennsylvania.

Argued April 15, 1980.

Decided July 16, 1980.

Julian E. Harmon, Philadelphia, for appellant.

Samuel Kravitz, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is a child custody case involving a dispute between a parent and a non-parent. The case arose on the petition of the child's father seeking custody of his daughter Carla. Carla, then eleven years old, had been living with her maternal grandmother. The court of common pleas denied the father's petition and awarded custody of Carla to her grandmother. On appeal the Superior Court reversed, hold-

ing that the trial court, in failing to give the parent-child relationship sufficient consideration, did not apply the proper legal standard. We granted allowance of appeal to consider the important question of what standard should be applied in custody disputes between a parent or parents and non-parents.* We conclude that the standard adopted by the Superior Court is the appropriate one.

■ There can be no doubt that in every custody dispute the fundamental issue is the best interest of the child. Yet there can also be no doubt that the parent-child relationship should be considered of importance in determining which custody arrangement is in the child's best interest. The principles carefully fashioned by the Superior Court in *In re Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), and followed by the Superior Court in this case give appropriate weight to these important considerations and we now adopt those principles.

■ The Superior Court in *In re Hernandez* distinguished three types of custody disputes, those between parents, those between a parent or parents and the state, and those between a parent or parents and a third party. As the court noted, in disputes between parents we have long been guided by the controlling statutory direction to award custody with "regard first being had" to the relative fitness of the contesting parents and "the best interest and permanent welfare" of the child. Act of June 26, 1895, P.L. 316, § 2, 48 P.S. § 92. Thus in such cases the burden of proof is shared equally by the contestants and the child's well-being is the focus of consideration.

■ At the other extreme are custody disputes between a parent or parents and the state. And in these cases also our Legislature has established clear guidelines and procedures. Here either the Juvenile Act, 42 Pa.C.S. § 6301 et seq., or the Child Protective Services Law, 11 P.S. § 2201 et seq. are controlling. Yet the Juvenile Act has as its first express purpose: "To preserve the unity of the family whenever

* This case was reassigned to the present writer on May 27, 1980.

possible," § 6301(b)(1) and thus permits state-enforced custody only when a child is found delinquent or dependent as defined by the Act. See 42 Pa.C.S. § 6302. Likewise, the Child Protective Services Law permits protective custody only in cases of abuse, defined in relevant part as "serious physical or mental injury." 11 Pa.C.S. § 2203.

Between these two extremes are custody disputes between a parent or parents and a third party. Here we have neither the inevitability of family dissolution which attends a custody dispute between parents, nor a showing that state intervention is required to protect or rehabilitate the child. And as the Superior Court has correctly recognized, we are not guided in such cases by any similar legislative direction. Thus, in seeking an appropriate standard for the adjudication of such disputes, the Superior Court carefully and thoroughly reviewed prior decisions in this Commonwealth. The court then ultimately relied upon a number of prior decisions holding that parents have a "prima facie right to custody," which "may be forfeited if convincing reasons appear that the best interests of the child will be served by awarding custody to someone else." *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Super. 167, 170, 138 A.2d 225, 226–27 (1958); see *In re Hernandez*, supra, 249 Pa.Super. at 284, 376 A.2d at 653 (citing cases). Based on these decisions, the Superior Court, through Judge Spaeth, articulated the following approach:

"When the judge is hearing a dispute between the parents, or a parent, and a third party, . . . [t]he question still is, what is in the child's best interest? However, the parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty

> enough to bring the scale up to even, and down on the
> third party's side."

Id., 249 Pa.Super. at 286, 376 A.2d at 654 (footnote omitted).
We agree that this approach is appropriate. Clearly these
principles do not preclude an award of custody to the non-
parent. Rather they simply instruct the hearing judge that
the non-parent bears the burden of production and the
burden of persuasion and that the non-parent's burden is
heavy.

█ No doubt in some instances the best interests of the
child are served by awarding custody to a non-parent. Ex-
perience has taught the unhappy lesson that the parental
relationship is not an infallible guarantee that the parent
will provide the care and concern essential to a child's proper
development. Thus our Legislature has enacted those proce-
dures already mentioned which allow the state to intervene
in instances of delinquency, deprivation or abuse. In addi-
tion the Legislature has established express procedures to
terminate parental rights in cases of refusal or failure to
perform parental duties or in cases of repeated and contin-
ued incapacity, abuse or neglect. See Act of July 24, 1970,
P.L. 620, art. III, § 311, 1 P.S. § 311. Such a termination,
however, must rest on a demonstration of unfitness or
disinterest, and in such a case we are guided by a specific
legislative judgment as to when those rights normally re-
sulting from the fact of biological parenthood should be
severed.

█ As we have indicated, however, in custody cases such
as the present one, no such legislative judgment guides us,
and often neither party is demonstrably unfit to act as
custodian. In such circumstances the proper judgment as to
which custody arrangement will serve the child's best inter-
est is likely to be less obvious and more subject to the
discretion of the hearing judge. We do not question the
ability of the judges of our courts of common pleas to reach
fair and workable determinations. Nevertheless, we believe
the rule we adopt today reflects the important need for
restraint in an area where the judiciary should proceed with

the utmost caution. Thus where circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe the less intrusive and hence the proper course is to award custody to the parent or parents.

Viewed in this light, deference to the parental relationship is not an archaic adherence to any property rights theory of the family. Rather, as the United States Supreme Court has stated:

"The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' *Kovacs v. Cooper*, 336 U.S. 77, 95, 69 S.Ct. 448, 458, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring)."

*Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). See *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953); *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Our determination today is only an appropriate recognition that the blood relationship of parenthood has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children, and that without some showing of harm, the courts should not interfere with that arrangement. As the United States Supreme Court has emphasized:

"It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."

*Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 1090 (1944). There is no suggestion that this historical and traditional arrangement is invalid or imper-

missible and we do not believe that it is the role of the courts hastily to dismiss it. See Developments—The Family, 93 Harv.L.Rev. 1156, 1177–87 (April 1980). As Mr. Justice Powell has written in another context, the Supreme Court's decisions "establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. City of E. Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 53 (1977) (plurality opinion) (footnote omitted).

Finally, today's judgment is fully consistent with other recent decisions of this Court, such as *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977). In *Spriggs* a plurality of this Court discarded the "tender years doctrine" which, as usually applied, had created a presumption that the mother of a young child was a more appropriate custodian than the father. See, e. g., *Commonwealth ex rel. Lucas v. Kreischer*, 450 Pa. 352, 299 A.2d 243 (1973). *Spriggs* discarded the "tender years doctrine" because it was improperly based on a "stereotypic" view of the "roles of men and women in a marital union," a view which we considered "offensive to the concept of the equality of the sexes which we have embraced as a constitutional principle within this jurisdiction. See Pa.Const., art. I, § 28; *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974)." 470 Pa. at 299, 300, 368 A.2d at 639, 639–40. Yet because the rule we adopt today accords the same benefits to both fathers and mothers in custody disputes against third parties, nothing said in *Spriggs* casts any question on this approach. More importantly, a rule giving special weight to the parent-child relationship simply cannot be seen as an outmoded, stereotypical prejudice. Unlike gender, parenthood has never been thought an impermissible basis for legal distinctions. Accordingly, we agree with the Superior Court that the trial court did not apply the appropriate standard in this case.

■ The Superior Court went further, however, and, based on its own review of the record, awarded custody to the father. Although this procedure may not be inappropri-

ate in some cases, we do not believe the present record requires such a result. Rather, our review of the record convinces us that the trial court's determination may still stand. At the time of the hearing in this case, Carla, then eleven years old, had been living with her grandmother since she was less than two years old. Carla had developed stable and happy relationships with her grandmother, with neighborhood friends and, importantly, at school. In these circumstances we are unwilling now to disturb the trial court's order granting custody of Carla to her grandmother.

Accordingly, the order of the Superior Court is reversed and the order of the Court of Common Pleas is reinstated.

FLAHERTY, J., joins in this opinion and files a concurring opinion in which NIX, J., joins.

FLAHERTY, Justice, concurring.

I join with the opinion of Mr. Justice Roberts that the interests of the child, Carla, who is the subject of this custody dispute, would clearly best be served by permitting custody to remain with the child's grandmother. I am compelled to address, however, the question of the standard to be applied in the resolution of custody disputes, as the opinion of Mr. Justice Roberts does not sufficiently set forth what I would view as a warranted departure from the long-standing rules governing such cases.

The hearing court, which awarded custody to Carla's grandmother, stated in its opinion: "This court has always been guided by one controlling principle in these matters: the benefit, health and welfare of the child." Such a statement of the law clearly omitted recognition of a prima facie presumption that parents have a *right* to custody of their children as against third parties. Therefore, the Superior Court reversed the hearing court and, finding no convincing reason for overcoming a "presumption" favoring the parent, awarded custody to appellee.[1] The governing principle heretofore applicable to resolution of custody disputes

1. *Hooks v. Ellerbe*, 257 Pa.Super. 219, 390 A.2d 791 (1978).

between parents and third parties has become well established: parents have been "presumed" to merit custody absent convincing or compelling contraindications that such would not be in the best interests of their children.[2] The legitimacy of determining custody by means of such a presumption is questionable. In *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 300, 368 A.2d 635, 640 (1977), where we overruled the "tender years" presumption that custody should be awarded to mothers rather than fathers, we stated: "Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of 'presumptions'. Instead, we believe that our courts should inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case before the Court." The same reasoning should apply where the custody dispute is between parents and third parties.

The prima facie right here questioned arose not as an absolute property right but rather as a reciprocal of the obligation to care for, support, maintain, and educate one's offspring. Furthermore, it was founded on the premise that the affection flowing between those standing in the relationship of child and natural parent surpasses that existing between a child and any other person. *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 95, 66 A.2d 300, 305 (1949). Nevertheless, the underlying tenor of the "presumption" reflects an archaic concept that children are

2. *In re Adoption of Farabelli*, 460 Pa. 423, 333 A.2d 846 (1975); *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *In re Snellgrose*, 432 Pa. 158, 247 A.2d 596 (1968); *Commonwealth ex rel. Bendrick v. White*, 403 Pa. 55, 169 A.2d 69 (1961); *Cochran Appeal*, 394 Pa. 162, 145 A.2d 857 (1958); *Adoption of Ashton*, 374 Pa. 185, 97 A.2d 368 (1953); *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A.2d 350 (1953); *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 83, 66 A.2d 300 (1949); *Commonwealth ex rel. Parker v. Blatt*, 165 Pa. 213, 30 A. 674 (1895); *Heinemann's Appeal*, 96 Pa. 112 (1880); *Commonwealth ex rel. Insalaco v. Delconte*, 201 Pa.Super. 354, 192 A.2d 750 (1963), aff'd, 413 Pa. 221, 196 A.2d 353 (1964); *Commonwealth ex rel. Buckner v. Barr*, 173 Pa.Super. 124, 95 A.2d 355 (1953), aff'd, 376 Pa. 9, 101 A.2d 621 (1954); *Commonwealth ex rel. Haller v. Hanna*, 168 Pa.Super. 217, 77 A.2d 750 (1951), aff'd, 367 Pa. 592, 81 A.2d 546 (1951).

proprietary assets of parents. Serious question may be posed with respect to the soundness of the apriorism that mere biological relationship assures solicitude, care, devotion, and love for one's offspring. Certainly, when such closeness exists, parenthood would be a strong factor to be prominently weighed in determining a child's best interest, since effective parental affiliation is in itself of value to a child. However, where a third party better fulfills these needs, or where other circumstances indicate third party custody to be preferable, the courts, when exercising judgment as to a child's welfare, should not be restrained solely by a presumption.

The opinion of Mr. Justice Roberts well notes that the "fundamental issue is the best interest of the child" and that "the parent-child relationship should be considered to be of importance in determining which custody arrangement is in the child's best interest", but does not clearly identify the standard to be applied as solely that of the child's best interest. The opinion quite properly proclaims that "special weight" and "deference" should be accorded the parent-child relationship, and that the relationship should not be disturbed "without some showing of harm" or unless circumstances "clearly indicate the appropriateness of awarding custody to a non-parent."

However, although according recognition that a child's best interest should be the paramount concern of a judge, the opinion unfortunately states that the standard applied by the Superior Court in this case was the correct one, rather than the rule applied by the hearing court which omitted recognition of a "presumption" or "right" favoring the parents. Indeed, Mr. Justice Roberts cites with approval a view that "parents have a 'prima facie *right* to custody,' which will be forfeited only if '*convincing* reasons' appear that the child's best interest will be served by an award to the third party." (Emphasis added.) *In re Hernandez*, 249 Pa.Super. 274, 286, 376 A.2d 648, 654 (1977). Such an approach should be replaced with a rule which would simplify and clarify application of the best interest standard. By

clearly eliminating the presumption *per se*, and mandating that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration*, custody proceedings would be disentangled from the burden of applying a presumption that merely beclouds the ultimate concern in these cases: the determination of what affiliation will best serve the child's interests, including physical, emotional, intellectual, moral, and spiritual well-being.

NIX, J., joins in this concurring opinion.