748

### ORDER

**In Re: Heym**

*Frederick N. Frank,* for Miriam Schniedmill.
*David M. Korman,* for Benjamin and Miriam Nadoff.

ZAVARELLA, *A.J.,* August 7, 1980—This matter concerns the appointment of a guardian of the person of George Heym, also known as Gedalya Heym, a minor aged 12. The minor's mother, Robyn Heym, died May 28, 1980. The minor's father is Richard Heym. His current whereabouts are unknown.

The petition seeking the appointment of a guardian of the person requests the appointment of Miriam Schneidmill. Miriam Schneidmill resides at 22-20 77th Street, East Elmhurst, New York 11370. She is not related to the minor. The next of kin of the minor is his maternal grandfather, Morris Mintz, who resides at 330 84th Street, Miami Beach, Florida 33139. Mr. Mintz joins in the request to appoint Miriam Schneidmill. Attached to the petition for appointment of a guardian of the person is the original of the following writing prepared by Robyn Heym and executed by her.

"To Whom It May Concern

In case of my death it is my wish that Miriam Schneidmill be given custody of my son George Heym. In *no* case is Richard Heym, George's father, to be granted custody since he has not been in touch with us, nor contributed to George's support for the past five years.

Signed

/s/ Robyn Heym"

The petition for the appointment of a guardian of the person was filed May 30, 1980, and the order issuing citations was signed June 2, 1980. On May 28, 1980, the parties to this proceeding appeared before the Honorable Lawrence W. Kaplan of the family division of this court and at that time consented to the entering of an order directing that custody, control and care of the minor would be the responsibility of Rabbi Benjamin Nadoff and his wife, Miriam Nadoff, who reside at 1617 Shady Avenue, Pittsburgh, Pa. 15217. The minor had been residing with Rabbi and Mrs. Nadoff since May 9, 1980 following the hospitalization of his mother on May 5, 1980. The parties consented to the entry of the above order following the stipulation that the order would in no manner prejudice any individual's right to petition for the appointment of a guardian of the person or of the estate of the minor. All parties believed that the interests of the minor were best served in this manner during the period immediately following the death of his mother.

Subsequent to the petition of May 30, 1980, Rabbi Benjamin Nadoff and Miriam Nadoff, his wife, presented their petition for the appointment of a guardian of the person of the minor. An order was entered accepting the petition and consolidating it with the previously filed petition of Miriam

Schneidmill. A hearing was scheduled on June 30, 1980. Prior to hearing, counsel for the Nadoffs moved to strike Exhibit A (the writing) and all references thereto since:

"(a) Said writing has not been proven to be testamentary;

(b) Appointment of a testamentary guardian is solely a statutory right pursuant to the Act of June 30, 1972, P.L. 508, No. 164, §2, 20 Pa.C.S.A. §2519;

(c) Said document fails, even if testamentary as the alleged Testatrix was not *'the sole surviving parent.'*

(d) Said failure to comply with said statute is apparent on the Petitioner's face (See paragraph 3 of said Petition)."

Counsel for Miriam Schneidmill answered the Nadoff petition and moved to strike their petition for lack of conformity to law setting forth that the Nadoff petition is not based upon any writing executed by the deceased mother and further that the issue of whether the appointment of the Nadoffs or the appointment of Miriam Schnedmill would be in the child's best interest is irrelevent to this proceeding as Robyn Heym did name Miriam Schneidmill as guardian of the person of Robyn Heym's child in a writing to be effective upon her death, and there is no contradictory writing from Robyn Heym appointing the Nadoffs guardian of the person in the event of the death of Robyn Heym.

The testimony of the hearing substantially conforms to the allegations of the petitions. Exhibit A was prepared by Robyn Heym and was executed by her in the presence of Ileen DeVault and Beverly Cronin. The testimony further indicates that Richard Heym, father of the minor, has not seen,

supported, nor had any contact with the minor for more than five years. Efforts were made to contact Richard Heym; however, they were unsuccessful and the parties do not know whether Richard Heym is living or deceased. It appears that decedent's writing is authentic and that decedent was competent to make a will.

Section 2519 of the Probate, Estates and Fiduciaries Code, as amended, 20 Pa.C.S.A. §2519, provides as follows:

"(a) Guardian of the Person.—A person competent to make a will, being the sole surviving parent or adopting parent of any unmarried minor child, may appoint a testamentary guardian of the person of such child during his minority, or for any shorter period except that no parent who, for one year or upwards previous to his death, shall have willfully neglected or refused to provide for his child, or who, for a like period, shall have deserted the child or willfully failed to perform parental duties, shall have the right to appoint a testamentary guardian of the person of such child."

Counsel for the Nadoffs argues that the right of a parent to appoint a guardian is purely statutory and since the statute here clearly states that *only* the sole surviving parent may make a testamentary appointment, all references to a testamentary appointment by Robyn Heym must be stricken from this record. It is further argued that nowhere in the statute or at law has it been held that the non-abandoning parent is to be treated as being the sole surviving parent. The difficulty in accepting this argument is that the argument requests the court to ignore what appears to be a direct expression of the mother as to her wishes concerning custody after death. I do not believe the writing can be ignored. It is relevant to ascertain the intent of Robyn Heym in

appointing a "testamentary guardian" for her son: Latuch v. Latuch, 27 Fiduc. Rep. 113, 118 (1976). The motion to strike is denied on this basis.

Additionally, while the following is not necessary to decide the case in view of the final decision, I deem it necessary to discuss section 2519, supra. This part of the Probate, Estates and Fiduciaries Code was designed to preclude the appointment of a testamentary guardian of the person when the minor is survived by a parent who has not in any way forfeited his parental rights. If Richard Heym is alive and if he has not forfeited his rights, then he would have standing to object to the appointment of Miriam Schneidmill of the basis of the writing. The Nadoffs have no standing to make this argument on their own behalf or on behalf of Richard Heym. A reasonable interpretation would be that if a parent by desertion or neglect loses his right to appoint a testamentary guardian as provided in section 2519, then the right to object to an appointment is also lost. This issue, however, need not be decided since I am convinced that the ultimate issue and paramount concern is the best interest of George Heym, Shoemaker Appeal, 396 Pa. 378, 152 A. 2d 666 (1959), whether there has been a testamentary appointment or not. The matter of custody is a sensitive issue and should not be decided on presumptions or side issues. This matter will therefore proceed to hearing on that basis.

I do not believe, however, that the contesting parties in this matter equally share the burden of proving best interest. This is not a dispute between parents, nor one between parent and third party, nor one between parent and state: In re Custody of Hernandez, 249 Pa. Superior Ct. 274, 376 A. 2d 648 (1977). And one may argue that is is not a strict custody case but is the appointment of a guardian of the person, although I believe the principles to be

the same. (Custody is awarded to the guardian of the person.) This is a case of third party versus third party. Miriam Schneidmill is not yet in loco parentis to George Heym insofar as precluding inquiry into his best interests, and yet because of the writing Miriam Schneidmill must have greater standing. As the result of Sipe v. Shaffer, 263 Pa. Superior Ct. 27, 396 A. 2d 1359 (1979), and Lewis v. Lewis, 267 Pa. Superior Ct. 238, 406 A. 2d 781 (1979), counsel and indeed the court must develop a complete record. Therefore, I hold that the parties do not start out even to the extent that the writing will be considered, together with all of the other required factors necessary to make an award that would be in the best interest of George Heym: Hernandez, supra, 286, 376 A. 2d 654.

## ORDER

And now, August 7, 1980, it is hereby ordered and decreed that the motion to strike filed on behalf of the Nadoffs be and is hereby denied. The matter is scheduled for further hearing August 26, 1980 at 10:00 a.m.

ZAVARELLA, *A. J.*, January 30, 1981—This matter concerns the appointment of a guardian of the person of George Heym, a minor. The facts have been previously set forth in an opinion dated August 7, 1980 and in a memorandum order dated August 20, 1980. The factual contents previously set forth will not be repeated with detail, but instead they are made part of this opinion by reference and by a brief reference thereto.

George Heym, also known as Gedalya Heym, is 12 years old. His mother, Robyn Heym, died May 28, 1980. The whereabouts of his father, Richard Heym, are not currently known. Richard Heym has

had no contact with George for years and efforts by the parties to locate Mr. Heym have proved futile. It is not known if Richard Heym is alive. George's apparent next of kin is his maternal grandfather, Morris Mintz, who resides in Miami Beach, Florida.

On May 30, 1980, petitioner Miriam Schneidmill sought to be appointed guardian of the person George. Miriam Schneidmill is not related to George. Her petition for the appointment of a guardian of the person was joined by Mr. Mintz. Attached to the petition was the original of the following writing prepared by Robyn Heym and executed by her in the presence of the subscribing witnesses.

"To Whom It May Concern

In case of my death it is my wish that Miriam Schneidmill be given custody of my son George Heym. In *no* case is Richard Heym, George's father to be granted custody since he has not been in touch with us, nor contributed to George's support for the past five years.

Signed<br>/s/ Robyn Heym

Witnesses:
    Ileen DeVault 6/3/79
    Beverly Cronin 6-3-79"

On June 10, 1980, Rabbi Benjamin Nadoff and Miriam Nadoff, his wife, filed their petition seeking to be appointed guardians of the person of George. George had been residing with the Nadoffs since May 9, 1980 following the hospitalization of his mother on May 5, 1980. On May 28, 1980, the parties herein appeared before the Honorable Lawrence W. Kaplan of the family division of this court and at that time consented to the entry of an order directing that custody, control and care of George would be the responsibility of the Nadoffs. The par-

ties consented to the entry of the above order following the stipulation that the order would in no manner prejudice any individual's right to petition for the appointment of a guardian of the person or of the estate of the minor. All parties believed that the interests of the minor would be best served in this manner during the period immediately following the death of his mother. The Nadoffs' petition was consolidated with the Schneidmill petition.

Preliminarily, a motion to strike the writing attached to the Schneidmill petition was filed on behalf of the Nadoffs and a hearing was held to determine the validity and also the relevancy of the writing in view of section 2519 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §2519, as amended, which provides:

"(a) Guardian of the person.—A person competent to make a will, being the sole surviving parent or adopting parent of any unmarried minor child, may appoint a testamentary guardian of the person of such child during his minority, or for any shorter period except that no parent who, for one year or upwards previous to his death, shall have willfully neglected or refused to provide for his child, or who, for a like period, shall have deserted the child or willfully failed to perform parental duties, shall have the right to appoint a testamentary guardian of the person of such child."

After hearing, it was held that the writing was authentic, testamentary and that Robyn Heym was competent to make a will. The contention of the Nadoffs that the writing must be stricken as Robyn Heym was not the sole surviving parent was not accepted. The writing was not to be ignored as it is relevant in ascertaining the desire of Robyn Heym as to the guardian of the person of her son.

Moreover, it was determined that the ultimate issue and paramount concern in this litigation is the best interests of George Heym, whether there has been a valid testamentary appointment or not. It was further determined that the matter of custody is a sensitive issue and should not be decided on presumptions or side issues. (Counsel for Miriam Schneidmill had argued that, by virtue of the writing, Miriam Schneidmill was in loco parentis to George Heym and there is therefore a presumption favoring her appointment to the exclusion of the Nadoffs and inquiry into the best interests of George Heym.) Counsel was directed to proceed on the best interests basis. This prior ruling is now affirmed by this opinion: Ellerbe v. Hooks, 490 Pa. 363, 416 A. 2d 512 (1980.)

Justice Flaherty, in a concurring opinion in Ellerbe filed July 18, 1980, stated at p. 371, 416 A. 2d at p. 516:

"The governing principle heretofore applicable to resolution of custody disputes between parents and third parties has become well established: parents have been 'presumed' to merit custody absent convincing or compelling contraindications that such would not be in the best interests of their children. [Counsel for Miriam Schneidmill would extend this to testamentary guardians.] The legitimacy of determining custody by means of such a presumption is questionable. In Commonwealth ex rel. Spriggs v. Carson, 470 Pa. 290, 300, 368 A. 2d 635, 640 (1977), where we overruled the 'tender years' presumption that custody should be awarded to mothers rather than fathers, we stated: 'Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of "presumptions." Instead, we believe that our courts should

inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case before the Court.' The same reasoning should apply where the custody dispute is between parents and third parties. . . .

"Nevertheless, the underlying tenor of the 'presumption' reflects an archaic concept that children are proprietary assets of parents. Serious question may be posed with respect to the soundness of the apriorism that mere biological relationship assures solicitude, care, devotion, and love for one's offspring. Certainly, when such closeness exists, parenthood would be a strong factor to be prominently weighed in determining a child's best interest, since effective parental affiliation is in itself of value to a child. However, where a third party better fulfills these needs, or where other circumstances indicate third party custody to be preferable, the courts, when exercising judgment as to a child's welfare, should not be restrained solely by a presumption. . . .

"However, although according recognition that a child's best interest should be the paramount concern of a judge, the opinion unfortunately states that the standard applied by the Superior Court in this case was the correct one, rather than the rule applied by the hearing court which omitted recognition of a 'presumption' or 'right' favoring the parents. Indeed, Mr. Justice Roberts cites with approval a view that 'parents have a "prima facie *right* to custody," which will be forfeited only if "*convincing* reasons" appear that the child's best interest will be served by an award to the third party.' (Emphasis added.) In re Hernandez, 249 Pa. Super. 274, 286, 376 A. 2d 648, 654 (1977). Such an approach should be replaced with a rule which

would simplify and clarify application of the best interest standard. By clearly eliminating the presumption *per se*, and mandating that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration*, custody proceedings would be disentangled from the burden of applying a presumption that merely beclouds the ultimate concern in these cases: the determination of what affiliation will best serve the child's interests, including physical, emotional intellectual, moral, and spiritual wellbeing." (Emphasis in original.)

I did not have the benefit of Justice Flaherty's concurring opinion prior to the August 7 opinion, but nevertheless I now adopt the reasoning of Justice Flaherty and extend it to controversies wherein the custody dispute is between a testamentary guardian and third parties. This is particularly so when the testamentary appointment is seriously challenged as in the within matter. Moreover, I believe this conforms to my prior holding that I would use the writing as one of the factors for consideration. To the extent, however, that the prior opinion gave Miriam Schneidmill greater weight, the prior opinion is not followed. This is in conformity with Albright v. Com. ex rel. Fetters, 491 Pa. 320, 421 A. 2d 157 (1980).

In Albright, Justice Nix states, at p. 323:

"At the outset, it must be emphasized that the cardinal concern in all custody cases is the best interest and permanent welfare of the child. [Citing cases.]

"Prior case law has variously attempted to articulate the burden to be placed upon the third party in a dispute over custody with a parent. Some cases have expressed the standard in terms of a parent

possessing a 'primary right to the custody of the child.' [Citing cases.] This formulation has been appropriately criticized because the expression 'primary right' connotes a type of property interest possessed by the parent in the child. . . .

"Most recently this Court has had occasion to adopt the standard set forth by the Superior Court in In re Hernandez, supra; Ellerbe v. Hooks, supra. In holding that parents have a 'prima facie right to custody,' we explained that standard as providing for: . . . 'simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy.' . . . However, we made it clear that there was no intention in adopting this formulation to suggest that parenthood alone would necessarily defeat the claim of custody of a non-parent. 'Clearly these principles do not preclude an award of custody to the non-parent.'. . .

"Thus the Hernandez standard, adopted by this court in Ellerbe, was intended to emphasize the importance of the maintenance of the parental relationship, yet at the same time permit the hearing court to award custody to the third party where the best interests of the child will be clearly served by such a decision." Pursuant to Albright, *any formulation tending to focus the inquiry on the respective rights of the contesting parties is improper. The real issue is the best interest of the child.* "Restated, the standard in this area is not to be construed as precluding a custody award to a nonparent, absent a demonstration of the parent's dereliction." Albright, supra., at p. 328.

Parenthood is a factor in determining the best interests of the child, even though the parent has not been shown to have been unfit.

By this opinion, I extend the reasoning of Justice

Nix to cases involving testamentary guardians. In so doing, I am not unmindful of the conflict of authority as set forth in Anno., Function, Power and Discretion of Courts, where there is testamentary appointment of guardian of minor, 67 A.L.R. 2d 803. This annotation states that in most jurisdictions the welfare of the infant ward should control in the appointment of a guardian and that the court exercising a sound discretion is not bound under all circumstances to appoint the person named in the will, but may appoint another if the welfare of the child will be benefited.

To the contrary, there is authority to the effect that one named in a will as guardian is entitled to a preference as to the appointment and the court should appoint that person as guardian if the person is qualified and if it does not appear that such appointment will be detrimental to the child. This authority was followed by county courts in Pennsylvania in Roche's Estate, 42 Pa. C.C. 681 (1914), and Palumbo's Estate, 15 Dist. R. 188 (1906). Palumbo ruled that an attempt by a common pleas court to appoint another as guardian was a nullity. Roche's Estate rules that the orphans' court like any other court, can revoke or amend one of its orders, but it cannot revoke or abrogate an act of an individual done in pursuance of or under authority of law. Roche's Estate finds support in Comerford v. Cherry, 100 So. 2d 385 (Fla. 1958). The Florida court framed the issue as follows:

"The courts have always seen to it that the property of a testator was received by those whom the testator intended. The upbringing of minor children is a matter which concerns every thoughtful human being more vitally that the disposition of his wordly possessions when he has passed on. No person is in a position to know as well who should have

the custody of children as the surviving parent. They are his flesh and blood. He has observed them throughout their lives. By daily contact he knows their temperaments and habits, and by observation he knows those who have evidenced the greatest interest in his children, and those whose moral and spiritual values are in his judgment conducive to the best interests of his children. A judge treads on sacred ground when he overrides the directions of the deceased with reference to the custody of his children."

I have carefully reviewed the cases cited by counsel for Miriam Schneidmill in support of her argument that the weight of authority is that a preference must be given to the guardian named in a will. I have also reviewed the cases cited in the A.L.R. Annotation previously mentioned. I am unable to conclude that the weight of authority is as cited, particularly in view of the recent Pennsylvania Supreme Court decisions suggesting the abolition of the use of presumptions in custody disputes. Clearly, if parents are not entitled to these presumptions, then a testamentary guardian standing in the place of a surviving parent now deceased should not be entitled to the presumptions. Moreover, if parenthood is to be a strong factor in a custody dispute, then the status of guardian should be a strong factor and nothing more.

The argument as to "loco parentis" is questionable: Com. ex rel. Patricia L. F. v. Malbert J. F., 278 Pa. Superior Ct., 343, 420 A. 2d 572 (1980). Likewise, the argument that Robyn Heym made a valid testamentary designation of a guardian is questionable. It should be made clear, however that even if the appointment is valid, the developing best interests of the child standard should permit a Pennsylvania trial court to exercise discretion

in the appointment of a guardian of the person designated by will when the appointment is being contested. This is so even considering the thoughtful decision of decedent as indicated by the testimony and the accurate recital of facts set forth in counsel's brief.

The hearing testimony in this matter has not been transcribed, however, trial notes and statements of fact set forth in briefs would fairly establish the following. Miriam Schneidmill is a 30 year old unmarried woman who resides in a one-bedroom apartment at 22-20 77th Street, East Elmhurst, New York 11370. She works full time as a controller for Sound Systems, Inc., Long Island City, New York, and also attends graduate school at Baruch College where she is taking courses in the Master's Business Administration program. She was a good friend of decedent, having attended school with her in New York and maintaining contact with decedent until decedent's death. She has known George since his birth and is familiar with his parents' separation and George's subsequent residences. She possesses sufficient assets and income to care for George. She described her residence in New York City and indicated her willingness to move into a two-bedroom apartment if she is appointed guardian. She is willing to make arrangements to provide for the education of George in schools which would continue the religious education indicated by George's mother. The religious traditions of decedent and her wishes for her son would be observed. She is further willing to adjust her job schedule and provide the companionship of her father and brother to assist her in the upbringing of George. Her brother has had frequent contact with George and is willing to treat George as his nephew and to assume the responsibility of that

relationship. All family members in New York City are willing to maintain contact with George through visits. There is a good relationship between George and Miriam Schneidmill.

Alan A. Axelson, M.D., a well regarded expert in matters such as this, testified that Miriam Schneidmill has the ability to be a parent, is a stable person and that there is no inherent problem in being a single mother in that other men in the family can provide help and guidance. He further testified that it is impossible to determine best interests of a child unless the psychiatrist or psychologist interviews all parties and has been given the opportunity to evaluate the method in which each party would propose to raise the child. It is difficult to predict the virtues of two parent households rather than single parent households.

Benjamin Nadoff, age 53, is a Rabbi and Hebrew teacher at Hillel Academy in Pittsburgh. His wife, Miriam, is 47 years old. They have seven children ranging in age from 12 to 28 and two children, David and Yisroel, a month older than George, living with the Nadoffs in their home. Their home is located in a residential area of the City of Pittsburgh and is more than adequate to provide a home for George. George and Yisoel Nadoff are close and there is a good relationship between the Nadoff children and George. The Nadoffs are willing and capable of providing and serving George's intellectual, moral and spiritual well-being. Their reputation in the community as testified to by prominent attorneys and physicians is excellent. Emil Herman, Esq., testified that George is happy and well adjusted. Dr. Twerski likewise testified that George is happy, close with the Nadoff family and has a good relationship with them. Likewise, Mrs. Celeste Stewart, also an expert in child placement

and child development, testified that the relationship between George and the Nadoffs is excellent. Her report is in evidence.

Dr. Rosenbloom, a psychologist and also a well regarded expert, testified that he conducted extensive tests and interviews with George. He saw him first in June of 1980 relative to the loss of his mother and his general state of feelings. On June 24, 1980, he administered tests and interviewed George. As of June 24, 1980, George was subdued and found it difficult to accept the death of his mother and the loss of his father. George is a bright child and is aware of the choices in this matter. He considers Miriam Schneidmill his godmother and friend and knows of the advantages of family and friends in New York City. He is aware of the writing involved herein and is aware of his religion and continued religious upbringing. He is comfortable and happy with the Nadoffs and has been treated well. Test results show him to be sensitive and perceptive, although somewhat guarded. He is aware of the conflict presented by this litigation and would not want to make the decision. Dr. Rosenbloom indicated it would be detrimental to ask George to make the choice. George requires a male role in his life and needs an active family life. Dr. Rosenbloom again saw George July 8, August 25, 1980. He appeared to be happier at this time and according to Dr. Rosembloom, this was caused by the passage of time. The choices of guardians was still present, although George was beginning to indicate that he wished to continue his religious education in Pittsburgh. He was reluctant to talk about his mother; however, according to Dr. Rosenbloom, this was normal. There was a good family interaction with no pressure from the Nadoffs. This same type of relationship is possible with Miriam

Schneidmill. There was a good relationship with George's mother's family and friends, and this should be maintained. George is "glad that no one is applying pressure upon him," and therefore Dr. Rosenbloom suggested that George not be interviewed by the court and counsel. All parties agreed to this. I find this to be proper for if George were to indicate preference, perhaps the party not chosen would be hurt.

Mrs. Nadoff testified as to her relationship with George as teacher some two years ago and also described the Nadoff home and neighborhood and George's daily routine. She and her husband are able to care for George in all regards and will do so. They honor George's mother and pray for her. During her lifetime, Robyn requested volunteer's to "watch George" and the Nadoffs volunteered. The Nadoffs feel that George's mother trusted them and they further indicated their love for George and their willingness to provide for him. They feel that their own family and their experience as parents qualifies them as guardians. Rabbi Nadoff feels that George is attracted to him because of their personalities and further indicated that he and his wife will permit George to make his own choice as to his future education and training.

A review of this testimony leads to the following. All persons who participated in this matter demonstrated their love and sincere dedication to George. They have offered themselves to George and there is little doubt that George could reside in each of the homes which have been offered. George's relationships with Miriam Schneidmill and other friends of his mother's are not exactly the relationship that he shares and would maintain with the Nadoffs; however, they are not sufficiently dissimilar to lead to a conclusion in this matter. Most of the factors are

similar. As is pointed out in the Nadoff brief, a single woman (or man) can take care of a 12 year old boy and there is no legal prohibition to this effect. The child may be raised in an apartment and a non-resident is not barred from appointment as guardian. In fact, the law of Pennsylvania now prohibits disqualifying a single person or a non-resident from acting as a guardian of the person.

The law of Pennsylvania also requires the trial judge to set forth, after the development of a full and complete record, the reasons for the choice of custody. Here, while the proceedings were instituted on the basis of guardian of the person, both parties and the court conducted the hearings as including a determination of the custody of George. The law tells the trial judge what factors to not consider; however, it leaves to the trial judge the task of weighing the evidence to determine if there is a preponderance which would better serve the child's interests, including the well used phrase of physical, emotional, intellectual, moral and spiritual well-being. This proves to be a difficult task, particularly when the factors weigh evenly. In those cases, conclusions are often compelled on factors which in many other situations might be deemed of minor significance.

In this matter, I have concluded that it would be in the best interests of George to reside in a household with other children to enable him to learn from this relationship and benefit therefrom. I have concluded that it is in the best interest of George to reside in a family unit of children and two parents. Dr. Rosenbloom's testimony points to the need of George to share a full-time relationship with a person in place of his father. This will provide a single stabilizing factor in his life: Ellerbe, supra. Additionally, there will not be the need to provide the

companionship of others as would be necessary in the absence of Miriam Schneidmill during her necessary absences from the apartment. At the same time, the Nadoffs should not lose sight of the fact that George, according to Dr. Rosenbloom, requires the continued association with his friends and friends of his mother and family in New York. George has much to learn from his relationship with Miriam Schneidmill, and the relationship should be encouraged. He is entitled to this. Means must be established and maintained to insure that George will have a continuing relationship with Miriam Schneidmill and his family in New York. The order which follows provides that this be accomplished and, moreover, assures its continuance should the matter subsequently be raised in this court.

## ORDER

And now, January 30, 1981, Benjamin Nadoff and Miriam Nadoff, his wife, are appointed guardians of the person of George Heym, also known as Gedalya Heym. Primary custody of George Heym is placed with Benjamin Nadoff and Miriam Nadoff.

Counsel for Benjamin Nadoff and Miriam Nadoff shall submit to the court an order providing for visitation by George Heym in the home of Miriam Schneidmill. Both counsel shall work towards the preparation of such an order, keeping in mind the educational requirements and holiday observances of the minor. Vacation times shall be considered. If a consent order is not filed prior to April 1, 1981, the court will enter an order pertaining to visitation and partial custody.