J-A28039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID EUGENE LYNN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KRYSTLE MARIE LYNN N/K/A | : | No. 804 MDA 2021 |
| KRYSTLE MARIE MARUSIN | : | |

Appeal from the Order Entered June 3, 2021
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2019 FC-41770

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: DECEMBER 1, 2021**

Appellant David Eugene Lynn (Father) appeals from the Custody Order entered in the Civil/Family Division of the Court of Common Pleas of Lackawanna County on June 3, 2021.  Following a careful review, we affirm.

The trial court set forth the facts and procedural history herein as follows:

> This case involves a custody dispute between [Father] and [Appellee], Krystle Marie Marusin, (hereinafter "Mother") regarding their Minor Children, K.L. and M.L. (hereinafter "Minor Children").[1]  By way of background, the parties were before this [c]ourt on October 26, 2020, for a hearing on Mother's Motion for Appointment of *Guardian ad Litem* (hereinafter "GAL") for the Minor Children, which was filed on October 8, 2020. (Motion 10/08/20).  At that time, the parties reached an agreement which was adopted as an Order of Court and filed on October 27, 2020.

---

[*] Former Justice specially assigned to the Superior Court.
[1] K.L. was born in September of 2009, and M.L. was born in February of 2016.

(Stipulated Order, 10/27/20). Pursuant to the Stipulated Order dated October 27, 2020, the parties have shared legal and physical custody of the Minor Children. *Id*. In addition, the parties agreed to hold Mother's Motion for GAL in abeyance and Father agreed to ensure the Minor Children refer to his fiancée by her first name. *Id*.

On April 5, 2021, Mother filed a Petition for Emergency Special Relief wherein she aver[red] concerns with the safety of the Minor Children at Father's place of employment. (Petition, 04/5/21). The Honorable Judge Jarbola denied Mother's Petition for Emergency Special Relief but scheduled the matter for a conciliation conference before the Custody Master. (Order, 04/5/21). The parties appeared before the Custody Master on April 14, 2021 via video conference. (Order, 04/14/21). At that time, the parties were unable to reach an agreement. *Id*. The matter was scheduled for a hearing before this [c]ourt on Mother's Petition for a GAL that was held in abeyance and Mother's denied Petition for Special Relief on whether the Minor Children are safe at Father's place of employment. *Id*.

A hearing commenced before this [j]urist on June 3, 2021, via video conference. This [c]ourt heard testimony from Mother and Father. (Transcript, 06/03/21). After the hearing, this [c]ourt issued an Order dated June 3, 2021, ordering that the Minor Children shall not be permitted at either parties' place of employment absent a limited circumstance requiring their appearance. (Order, 06/03/21). In the event the parties must appear at their place of employment with the Minor Children, the Minor Children shall not be present at either parties' place of employment for longer than an hour in duration. *Id*.[2] Further, this [c]ourt ordered that Father shall ensure the Minor Children refrain from calling Father's fiancé[e] by terms relating to Mother. *Id*. In addition, this [c]ourt appointed Brenda Kobal, Esq. as the GAL for the Minor Children in this matter. *Id*.

On June 21, 2021, Father filed a Notice of Appeal of this [c]ourt's Order dated June 3, 2021 as well as Errors Complained on Appeal. (Notice, 06/21/21). On July 8, 2021, Father's [c]ounsel provided this [c]ourt with a Docketing Statement containing issues raised on appeal, which will be addressed by this [c]ourt below.

---

[2] Father's place of employment is a mechanic's garage. No testimony was presented pertaining to mother's workplace.

Trial Court Opinion, filed 7/20/21, at 1-3.

In his brief, Appellant raises two issues for our review:

1.      Whether the [t]rial [c]ourt abused its discretion by ordering that Appellant/Father shall ensure that the minor children refrain from calling Father's fiancée by terms relating to Mother but not limited to Mom.

2.   Whether the [t]rial [c]ourt abused its discretion by ordering that the minor children shall not be permitted at either parties' place of employment for longer than an hour duration.

Father's Brief at 4.

This Court's standard of review of a child custody order is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***Graves v. Graves***, 2021 WL 4839479 at *3  (Pa.Super. Oct. 18, 2021).

Furthermore:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert,* 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck,* 858 A.2d 1250, 1254 (Pa.Super. 2004)).

Father contends the trial court's determinations as to the name by which the Minor Children refer to Father's fiancée and the amount of time that they are permitted to spend at his place of employment are unsupported by the record and, therefore, manifestly unreasonable and a gross abuse of discretion. Father's Brief at 7, 10. Father reasons that the testimony at the June 3, 2021, hearing failed to show the Minor Children's referring to his fiancée as mom and spending more than one hour in his place of employment are contrary to the children's best interest. *Id*. at 10. Following our review of the entire record, we disagree.

Mother testified regarding the ways in which she perceived Father had attempted to alienate the Minor Children from her including his insistence that their conversations be on speaker phone, his telling the children that Mother had ended the marriage and cares more for herself than she cares for them, and his violating the provision in the Custody Order prohibiting the Minor Children from calling Father's fiancée mom. N.T. 8, 10-12, 15-16. Mother also explained that she feared for her children's safety when they are at Father's mechanic's garage for an entire day. She was especially concerned for M.L.'s safety not only due to the nature of the materials found in the garage but also because of M.L.'s friendly and trusting nature with strangers which

could lead to her being harmed if unsupervised for even a short period of time. *Id*. at 21-22.

In his brief, Father stresses he testified that he encourages the Minor Children to know "their mother is their mother" and that she is a "good person." Brief of Appellant at 10 citing N.T. 6/3/21, at 39. Father reasons this testimony is in contravention to the trial court's finding that Father's encouraging the children to refer to his fiancée as mom fails to promote a positive relationship between Mother and them.

Ignoring Mother's testimony, Father also states the record is devoid of any evidence to support the trial court's conclusion that such reference confuses the Minor Children. Father contends that, conversely, the record illustrates they are comfortable referring to his fiancée in that manner. Brief for Appellant at 10. In addition, Father believes it is his right as a parent to have his children periodically present at his place of employment, especially in light of the global pandemic. He explains that when the children are at his workplace, he is not performing manual labor and stays in the front office portion of the establishment with them. *Id*. at 11-12.

The trial court heard Mother's testimony as well as Father's contrary statements and thoroughly considered the necessary factors for determining the best interests of the Minor Children prior to entering its June 3, 2021, Order. The court detailed its reasons for its holdings as follows:

> The fundamental consideration in any child custody case is the best interest of the child. *Ellerbe v. Hooks*, 416 A.2d 512, 513

(Pa. 1980). "Upon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338 (Westlaw 2021). The Pennsylvania Statute, 23 Pa. C.S.A. §5328, sets out the following specific factors for courts to consider when issuing a custody order:

> **Factors.** --In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused parry and which party can better provide adequate physical safeguards and supervision of the child.
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> (3) The parental duties performed by each party on behalf of the child.
> (4) The need for stability and continuity in the child's education, family life and community life.
> (5) The availability of extended family.
> (6) The child's sibling relationships.
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
> (11) The proximity of the residences of the parties.
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
(14) The history of drug or alcohol abuse of a party or member of a party's household.
(15) The mental and physical condition of a party or member of a parry's household.
(16) Any other relevant factor.

23 Pa. Cons. Stat. Ann. § 5328 (Westlaw 2021)

During the hearing, Mother testified that Father continues to allow the Minor Children to call his fianc[é]e "mom" even after he stipulated in the Order dated October 27, 2020, that he would ensure the Minor Children call his fiancé[e] by her first name. (Transcript, 06/03/21, p.12). Mother testified that Father started having the Minor Children call his fianc[é]e by "mom" after only dating for seven (7) months. *Id*. at 13. Mother further testified that she has attempted to speak to Father regarding this issue and he became irate and told her, "[I]t's a violation of his rights." *Id*. Father testified that, "My girls need to know that their mother is their mother, and she's a good person. Like, no matter what, at the end of the day, that's their mother." *Id*. at 41. However, Father also testified that recently he has not corrected the Minor Children when they are referring to his fianc[é]e as "mom" and has spoken to the Office of Youth and Family Services regarding his rights to have the Minor Children refer to his fianc[é]e as "mom." *Id*. at 42.

This [c]ourt found that it is in the best interest of the Minor Children to ensure they are not referring to Father's fianc[é]e as "mom." Mother has shared custody of the Minor Children and plays [a] significant role in their lives. Further, this [c]ourt found that having the Minor Children refer to Father's fianc[é]e as "mom" is confusing to them considering their young ages. Father's actions fail to promote a positive relationship between the Minor Children and Mother for the emotional well-being of the Minor Children. Therefore, this [c]ourt issued an Order directing Father to ensure that the Minor Children refrain from referring to his fianc[é]e as "mom."

Mother also testified regarding her concerns for the safety of the Minor Children at Father's place of employment, his mechanic's garage. Mother testified that the Minor Children watch television in the waiting room of the garage while Father is

working in the bay area for eight (8) hours with no other employees at the garage. *Id*. at 23. Mother also expressed concerns with the minor child, M.L., having unsupervised contact with customers in the waiting room area given the fact that she is a very trusting five-year-old who would leave the garage with a stranger. *Id*. at 24. Mother testified that, on at least one (1) occasion, she has arrived at Father's garage and the minor child, M.L., was outside of the waiting room door by herself. *Id*. at 12. Mother expressed concerns with Father using his workplace as a babysitter during his periods of custody and requested this [c]ourt to limit the time the Minor Children could be at Father's work. *Id*. at 25.

Father testified that, "[T]hey (Minor Children) are here (Father's garage) about once a month if that...They're not here unsupervised either." *Id*. at 40. However, Father testified that he is the only person working at his mechanic's garage and runs the whole garage by himself. *Id*. Father testified that, once again, he contacted the Office of Youth and Family Services about his right to have the Minor Children at his business. *Id*.

This [c]ourt found that a mechanic's garage is not an appropriate place for the Minor Children for eight (8) hours while Father is working. This [c]ourt believes that it is inappropriate for a minor child to be at any workplace for eight (8) hours. Therefore, this [c]ourt determined that it is in the best interest of the Minor Children to not be permitted at either parties' place of employment for longer than an hour duration.

Trial Court Opinion, filed 7/20/21, at 3-6.[3]

In making the aforesaid arguments, Father essentially asks this Court to ignore the aforementioned testimony read in its totality and to reexamine the trial court's credibility findings made following the hearing which we cannot do. **See Ketterer**, **supra**.

---

[3] The Minor Children's Guardian Ad Litem submitted a brief in support of affirmance for this Court's review and in doing so she indicated that she concurs with the trial court's legal analyses and conclusions. **See** Brief in Support of Affirmance Submitted by Guardian Ad Litem for Minor Children K.L. & M.L.

- 8 -

Upon our review, we conclude that the trial court did not abuse its discretion in determining it is in the best interest of the Minor Children to ensure they are not referring to Father's fiancée as mom and that they are not spending more than one hour at either parent's place of employment. Thus, we affirm the Order from which this appeal arose.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2021