J-A03008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.W. & A.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| D.S.G. | |
| Appellant | |
| v. | |
| A.M.W. | |
| | No. 1306 MDA 2014 |

Appeal from the Order Entered July 2, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-2737-2011

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED MAY 05, 2015**

Appellant, D.S.G. (Father) appeals from the July 2, 2014 order granting primary physical custody of his son, J.G.[1], to M.W. (Maternal Grandfather), and A.W. (Maternal Grandmother, collectively, Maternal Grandparents), and partial physical custody to Father.  Upon careful review, we affirm.

We summarize the relevant factual and procedural history as follows. Father and A.M.W. (Mother) are the natural parents of J.G.  Father and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] J.G. was born in February 2008.

Mother never married. Pursuant to a stipulated order, dated October 29, 2010, Mother exercised primary physical custody, Father exercised partial physical custody every weekend, and Father and Mother shared legal custody. Petition for Grandparent Primary Custody, 12/30/11, at Exhibit 1 "Custody Stipulation."

On December 30, 2011, Maternal Grandparents filed a "petition for grandparent primary custody" and a petition for emergency relief, wherein they sought primary physical custody and shared legal custody of J.G. *Id.* at ¶ 15. Maternal Grandparents alleged that J.G. resided in their home with Mother from his birth until June 2009, when Mother and J.G. began residing in Father's home. *Id.* at ¶¶ 7-8. In addition, Maternal Grandparents alleged that J.G. and Mother resided with them from March 2010 until October 29, 2011, when Mother and J.G. went to live with Mother's new boyfriend, B.C. *Id.* at ¶ 9. Maternal Grandparents alleged that Mother placed J.G. in their temporary care on December 25, 2011, due to the arrest of B.C. *Id.* at ¶ 10. Maternal Grandparents alleged that J.G. is at risk in Mother's custody because Mother and B.C. have serious drinking problems, and that B.C. has a history of assaultive behavior and drug use. *Id.* at ¶ 13. On January 17, 2012, Maternal Grandparents filed an "amendment to petition for grandparent primary custody" wherein they alleged that Father also suffers from alcohol abuse and has a history of assaulting Mother. Amendment to Petition, 1/17/12, at ¶ 14.

On January 17, 2012, Father filed preliminary objections wherein he contended that Maternal Grandparents lacked standing to pursue custody of J.G. On January 23, 2012, Father filed amended preliminary objections. A hearing on Father's preliminary objections and Maternal Grandparents' emergency petition commenced before a custody hearing officer on January 31, 2012, during which Maternal Grandfather, Maternal Grandmother, and Father testified. The hearing was continued to February 15, 2012, during which Mother testified.[2,3]

By interim order dated March 5, 2012, the trial court overruled Father's preliminary objections. In addition, the trial court denied Maternal Grandparents' petition for emergency relief. With respect to a temporary

---

[2] The trial court stated that the hearing was again "continued in progress until February 21, 2012." Trial Court Order, 3/5/12, at 3. We observe that the February 21, 2012 hearing transcript was not made a part of the certified record. "It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 240 (Pa. Super. 1996) (citation omitted); *accord Kessler v. Broder*, 851 A.2d 944, 950 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1201 (Pa. 2005). However, in this case, we conclude that the February 21, 2012 hearing transcript is not necessary for our review of Father's first issue on appeal. Therefore, we need not take any action with respect to Father's failure to provide the complete transcripts from the hearing on his preliminary objections. *See* Pa.R.A.P. 1911(d).

[3] At the time of the hearing on Father's preliminary objections and Maternal Grandparents' petition for emergency relief, Maternal Grandparents were exercising primary physical custody, but not shared legal custody, pursuant to a temporary order dated January 27, 2012, as a result of a second emergency petition filed by Maternal Grandparents on January 26, 2012.

custody order, the trial court granted Father and Mother shared legal custody, and granted physical custody as follows.

> Mother shall have from Monday at 8:00 p.m. to Friday at 5:00 p.m., [p]rovided, however, that Mother's shared physical custody shall be suspended if Mother begins either to cohabitate with [B.C.], or allows [B.C.] to be in the presence of the child, in which case the child shall return to the home of [M]aternal Grandparents for Mother's shared custodial time.
>
> Father shall have alternating weekends from Friday at 5:00 p.m. until Monday at 8:00 p.m.
>
> Maternal Grandparents shall have intervening weekends from Friday at 5:00 p.m. until Monday at 8:00 p.m.

Trial Court Order, 3/5/12, at 12.

On September 20, 2012, Maternal Grandparents filed a petition for contempt against Mother wherein they alleged that Mother violated the March 5, 2012 interim order by cohabiting with B.C. and allowing J.G. to be in B.C.'s presence. Petition for Contempt, 9/20/12, at ¶¶ 7, 9. The petition further averred that Mother is pregnant with B.C.'s child. *Id.* at ¶ 8. On November 1, 2012, following a hearing, the trial court entered an interim order which found Mother in contempt and suspended her physical custody. The trial court directed that J.G. be returned to the home of Maternal Grandparents, and that Mother shall have supervised custody at the home of Maternal Grandparents on intervening weekends from Friday at 5:00 p.m.

- 4 -

until Monday at 8:00 p.m. Trial Court Order, 11/1/12, at 3.[4] With respect to Father, the court directed that he shall continue to exercise physical custody pursuant to the March 5, 2012 interim order. *Id.*

The custody trial occurred on June 24, 25, and 26, 2014, at which time J.G. was six years old. At the commencement of the trial, Maternal Grandparents had exercised primary physical custody for nearly 20 months pursuant to the November 1, 2012 interim order. During that time, J.G. had completed kindergarten at St. Jerome's Elementary School where he received the highest mark in all areas of measurement. Trial Court Opinion, 7/2/14, at 6. The trial court also noted that in July 2013, J.G. developed Kawasaki Disease, a chronic disease, for which the Maternal Grandparents have provided proper treatment. *Id.*; N.T., 6/24/14, at 211-212.

Maternal Grandparents presented the testimony of Joseph Sheris, Ph.D., the court-appointed custody evaluator, and Maternal Grandmother. Father testified on his own behalf and presented the testimony of L.S.G. (Paternal Grandmother); A.G. (Paternal Grandfather); and Father's brothers, A.G., Jr., and I.G. Mother testified on her own behalf and presented the testimony of B.C., her boyfriend; K.Y., a friend of Mother and B.C.; and J.B., the aunt of B.C. In its opinion accompanying the subject order, the trial

---

[4] The trial court's November 1, 2012 order does not contain pagination. For ease of review we have assigned each page a corresponding page number.

court set forth its factual findings, which we adopt herein. Trial Court Opinion, 7/2/14, at 4-13.

By order dated and entered on July 2, 2014, the trial court granted shared legal custody to Maternal Grandparents, Father, and Mother. The court granted primary physical custody to Maternal Grandparents and partial physical custody to Father and Mother as follows.

> 3. Partial physical custody of the said Minor Child is AWARDED to his Father [ ], and his Mother [ ], every other weekend beginning July 11, 2014, from 5:00 P.M. until Monday at 8:00 P.M. to be divided as follows:
>
> > 3a. Mother shall have the Child from Friday at 5:00 P.M. until Sunday at noon.
> >
> > 3b. Father shall have the Child on alternating weekends beginning July 11, 2014, from Sunday at noon until Monday at 8:00 P.M.

Trial Court Order, 7/2/14, at 2. On July 31, 2014, Father filed a notice of appeal.[5] Mother did not file a notice of appeal, but she did file an appellee brief wherein she argued in support of Father's issues on appeal. On August

_____

[5] Father failed to file a concise statement of errors complained of on appeal concurrently with the notice of appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2) and (b). By order dated August 19, 2014, this Court directed Father to file a concise statement by August 29, 2014, and Father timely complied. Because Father timely complied with this Court's order and no party claims prejudice as a result of Father's procedural error, we decline to find his issues waived on appeal. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009); *cf. J.P. v. S.P.*, 991 A.2d 904, 908 (Pa. Super. 2010) (holding appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

6, 2014, the trial court directed that its March 5, 2012 interim order and July 2, 2014 order and opinion serve as its Rule 1925(a) opinion for purposes of this appeal.

On appeal, Father presents the following issues for our review.

> A. Whether the [t]rial [c]ourt committed an error of law by dismissing [Father]'s Preliminary Objections objecting to the standing of [Maternal Grandparents], filed January 17, 2012, and amended January 23, 2012[?]
>
> B. Whether the [t]rial [c]ourt committed an error of law or abuse of discretion by awarding primary physical custody to [Maternal Grandparents] by not properly applying the legal standard of proof[?]
>
> C. Whether the [t]rial [c]ourt committed an error of law or abuse of discretion when weighing the custody factors set forth in 23 Pa.C.S.A. § 5328[?]

Father's Brief at 2.

The scope and standard of review in custody matters is as follows.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> ***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009) (*quoting **Bovard v. Baker***, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,
>
>> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>>
>> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> ***R.M.G., Jr.***, ***supra*** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (parallel citations omitted).

Further, we have stated the following must be applied in analyzing a custody claim.

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting*

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004).

"[T]he paramount concern in a child custody case is the best interests of the child[.]" **K.B. II v. C.B.F.**, 833 A.2d 767, 770 (Pa. Super. 2003), *appeal dismissed as improvidently granted* 885 A.2d 983 (Pa. 2005). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

The Child Custody Act[6] (the Act), became effective on January 24, 2011. Because the proceedings in the instant case occurred after the effective date of the Act, the Act is applicable. **See C.R.F. v. S.E.F.**, 45 A.3d 441, 445 (Pa. Super. 2012) (concluding that "where the evidentiary proceeding commences on or after the effective date of the Act, the provisions of the Act apply even if the request or petition was filed prior to the effective date[]").

In his first issue, Father argues the trial court committed an error of law in overruling his preliminary objections and finding that Maternal Grandparents had standing pursuant to 23 Pa.C.S.A. § 5324(3)(iii)(C). Father's Brief at 5.

_____

[6] 23 Pa.C.S.A. §§ 5321-5340.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." ***Silfies v. Webster***, 713 A.2d 639, 642 (Pa. Super. 1998). "Where a statute delineates the class of members who can assert a claim under the statute, standing is governed by the language of the statute itself. Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.***, 41 A.3d 16, 22 (Pa. Super. 2012) (*en banc*), *reversed on other grounds*, 90 A.3d 682 (Pa. 2014).

Additionally, our Supreme Court has explained as follows.

> "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of legislative intent, ***Commonwealth v. McCoy***, 962 A.2d 1160, 1166 (Pa. 2009), and the words of a statute "shall be construed according to rules of grammar and according to their common and approved usage …." 1 Pa.C.S. § 1903(a). We generally look beyond the plain language of the statute only where the words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922; ***see also Commonwealth v. Diodoro***, 970 A.2d 1100, 1106 (Pa. 2009).

***Commonwealth v. Garzone***, 34 A.3d 67, 75 (Pa. 2012) (parallel citations omitted).

Maternal Grandparents sought standing pursuant to the following provision of the Act.

**§ 5324. Standing for any form of physical custody or legal custody**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

…

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

…

(C) The child has for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324(3)(iii)(C).

In analyzing said statute, the trial court made the following conclusions based on the testimony during the hearing on Father's preliminary objections.

> The maternal grandparents are not in loco parentis with the child. The relationship of the child with the maternal grandparents began with Mother's consent. Maternal grandparents have assumed and are willing to assume responsibility for the child. The child resided in the home of the maternal grandparents for a majority of his life and specifically for the twelve months from October 29, 2010, until October 29, 2011. Maternal grandparents brought this action on December 30, 2011, which is within six months of the removal of the child by Mother. Maternal grandparents have pleaded and have proven sufficient contact with the subject child to give them standing pursuant to 23 Pa.C.S.[A. §] 5324.

Trial Court Order, 3/5/12, at 11. The record evidence supports the trial court's findings.

Nevertheless, Father argues the court's reasoning is flawed for the following reason.

> During said twelve month period [from October 29, 2010 to October 29, 2011], **there is no dispute that Mother and Child resided in Grandparents' home**, thereby making the issue whether time that both Mother and Child spent residing in Grandparents' home should properly be considered when addressing the twelve month period set forth in the statute.

Father's Brief at 7 (emphasis in original). We are not persuaded by Father's argument.

The text of Section 5324(3)(iii)(C) reveals no explicit intent by the General Assembly to discount from the requisite 12-month time period any time that a parent of the child resides, along with the child, in the home of a grandparent who is not in loco parentis to the child. Further, the plain meaning of the provision does not lead to an absurd or unreasonable result. **See generally** 1 Pa.C.S.A. § 1922. Indeed, it is not unreasonable for the General Assembly to provide such a grandparent with the opportunity to seek any form of physical or legal custody. In fact, as Father's own argument illustrates, the General Assembly's changes to the Act relaxed the requirements for a grandparent to seek physical and legal custody.

In support of his argument, Father relies on **Gradwell v. Strausser**, 610 A.2d 999 (Pa. Super. 1992), a case decided prior to the current Act,[7]

---

[7] Inexplicably, the portion of the predecessor act held inapplicable in **Gradwell** was Section 5313(a) and provided as follows.

> **(a) Partial custody and visitation.--**If an unmarried child has resided with his grandparents or great-grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, the grandparents or great-grandparents may petition the court for an order granting them reasonable partial custody or visitation rights, or both, to the child. The court shall grant the petition if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship.

*(Footnote Continued Next Page)*

where the paternal grandfather resided with his adolescent granddaughter

and her parents for almost two years and sought physical and legal custody.

Contrary to the circumstance of the instant matter, the paternal grandfather

*(Footnote Continued)* ─────────────

23 Pa.C.S. § 5313 (repealed 2011). However, the applicable portion of the statute, which the Court did not address, was subsection (b) which stated as follows.

> **(b) Physical and legal custody.--**A grandparent has standing to bring a petition for physical and legal custody of a grandchild. If it is in the best interest of the child not to be in the custody of either parent and if it is in the best interest of the child to be in the custody of the grandparent, the court may award physical and legal custody to the grandparent. This subsection applies to a grandparent:
>
> > (1) who has genuine care and concern for the child;
> >
> > (2) whose relationship with the child began with the consent of a parent of the child or pursuant to an order of court; and
> >
> > (3) who for 12 months has assumed the role and responsibilities of the child's parent, providing for the physical, emotional and social needs of the child, or who assumes the responsibility for a child who has been determined to be a dependent child pursuant to 42 Pa.C.S. Ch. 63 (relating to juvenile matters) or who assumes or deems it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness. The court may issue a temporary order pursuant to this section.

23 Pa.C.S.A. § 5313(b).

in **Gradwell** argued on appeal that he acquired *in loco parentis* status[8] by meeting the statutory time period of residing with his granddaughter under Section 5313.[9] The **Gradwell** Court concluded that the paternal grandfather conflated the determination of standing based on *in loco parentis* status with that of standing pursuant to Section 5313. As such, we affirmed the order dismissing the paternal grandfather's custody complaint because he did not stand *in loco parentis* to his granddaughter.[10] In the instant matter, Maternal Grandparents correctly brought their claim under Section 5324(3)(iii)(C), and satisfied the necessary requirements of standing. As such, Father's first issue fails.

In the alternative, assuming Maternal Grandparents had standing to seek primary physical custody, Father argues in his second and third issues

---

[8] We have explained, "[t]he phrase 'in loco parentis' refers to a person who puts himself in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of 'in loco parentis' embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties." **Gradwell v. Strausser**, 610 A.2d 999, 1003 (Pa. Super. 1992) (citation omitted).

[9] As noted, paternal grandfather did not explicitly seek standing under Section 5313.

[10] Father appears to rely on *dicta* in **Gradwell** regarding the trial court's finding that the paternal grandfather had not met the requisite time period under Section 5313. Thus, if the paternal grandfather proceeded in the future under Section 5313, we stated that the proceedings "would prove fruitless." **Id.** at 1005. Notably, we did not discuss the reason for the trial court's finding that the paternal grandfather had not met the statutory time period. In the instant case, we will not disturb the trial court's determination based on unexplained *dicta* in **Gradwell**.

that the court committed an error of law and abused its discretion in the weight it placed on the evidence in light of Maternal Grandparents' heightened burden of proof. We disagree.

It is well established that natural parents have a rebuttable presumption against third parties in custody disputes, and the Act provides, in relevant part, as follows.

> **§ 5327. Presumption in cases concerning primary physical custody.**
>
> …
>
> **(b) Between a parent and third party.--**In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

23 Pa.C.S.A. § 5327(b). "Clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *V.B. v. J.E.B.*, 55 A.3d 1193, 1199 (Pa. Super. 2012) (citation omitted).

Regarding this presumption, we have concluded as follows.

> [O]ur Supreme Court [has] noted that "these principles do not preclude an award of custody to a non-parent. Rather they simply instruct the [trial] judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy."

*Id.*, quoting *Ellerbe v. Hooks*, 416 A.2d 512, 514 (Pa. 1980).

- 16 -

What the [trial] judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

*Id.*, *citing* **McDonel v. Sohn**, 762 A.2d 1101, 1107 (Pa. Super. 2000), *appeal denied*, 782 A.2d 547 (Pa. 2001), *quoting* **Ellerbe**, **supra** at 513-514 (Pa. 1980). Accordingly, we recognize that when a grandparent is involved in a custody dispute with a parent, the grandparent is a third party and bears this heightened burden. **Id.** at 1198-1199, *citing* **Charles v. Stehlik**, 744 A.2d 1255, 1258 (Pa. 2000), *cert. denied*, **Stehlik v. Charles**, 530 U.S. 1243 (2000).

When awarding any form of custody, the Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child.

**§ 5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to

- 17 -

the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[11]

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)….

_____

[11] The Act was amended, effective January 1, 2014, to include the additional factor at 23 Pa.C.S.A. § 5328(a)(2.1).

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, , 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, ***supra*** at 822-823.

Instantly, in its opinion accompanying the subject order, the trial court applied the statutory presumption against Maternal Grandparents, and in light of the Section 5328(a) custody factors, it concluded that the presumption was rebutted by clear and convincing evidence. Trial Court Opinion, 7/2/14, at 15-20. For purposes of this disposition, we summarize the findings of the court with respect to the most relevant custody factors in this case, all of which the court weighed in favor of Maternal Grandparents.

With respect to Section 5328(a)(2), concerning which party can provide adequate physical safeguards and supervision of the child, the trial court found that "Father's parent[ing] skills are deficient at this time." ***Id.*** at 16. The trial court's finding is supported by the testimony of Dr. Sheris, the court-appointed custody evaluator.

> I found [Father's] parenting skills were somewhat limited. He had limited parenting insights. He didn't seem to have much information related to child development. There was little indication in his responses, little elaboration in his responses that would indicate any anticipation of issues with

- 20 -

> parenting or problem solving in his parenting approaches.

N.T., 6/24/14, at 18.

With respect to Section 5328(a)(3), the parental duties performed by each party on behalf of the child, the court found that, "[w]hile there was a short period of time that Mother and J.G. resided with Father, his only other involvement was limited to weekend partial custody periods. It appears that Father is capable of properly caring for J.G. during weekend custody periods, but his personality structure and level of maturity at this time limit his ability to be named as primary physical custodian." Trial Court Opinion, 7/2/14, at 16-17. The testimony of Dr. Sheris likewise supports the trial court's findings.

With respect to Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, the trial court found that neither parent can provide for these needs of J.G. at this time, but that Maternal Grandparents can provide for J.G.'s needs. Trial Court Opinion, 7/2/14, at 17. The testimony of the parties supports this finding.

With respect to Section 5328(a)(5), the availability of extended family, the court found that Father does have extended family available to assist him in caring for J.G., but "their availability is limited due to their work hours and living arrangements." Trial Court Opinion, 7/2/14, at 17. This finding is supported by the testimony of the paternal grandparents that they are the

owners of a pizza shop where they work multiple hours per week.  N.T., 6/24/14, at 137-138, 158.

With respect to Sections 5328(a)(9) and (10), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, and, which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial court found that Maternal Grandparents are more likely than Father to meet these needs of J.G..  The testimony of Maternal Grandmother and Dr. Sheris supports this finding.

With respect to Section 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements, the court found that, "Father is available for part of the weekend when he has custody, but when he and his parents are all working at the pizza restaurant, J.G. is brought to the restaurant and plays in the alley behind it during those work hours.  Also, Father does not demonstrate parenting skills that would suggest he is an appropriate primary physical custod[ian]."  Trial Court Opinion, 7/2/14, at 18-19.  Father's testimony supports this finding in that he works at the pizza shop owned by his parents every week on Wednesday and Friday, from 10:30 a.m. to 4:00 p.m., on Thursday, from 4:00 p.m. to approximately 9:30 p.m., when the shop closes, and on Saturday, from 10:30 a.m. to 4:00 p.m.  N.T., 6/24/14, at 158; N.T., 6/25/14, at 305.  Father testified that, on his custodial weekends, J.G. stays at the pizza shop

with him. N.T., 6/25/14, at 306. In addition, he testified that J.G. "might play out in the back [of the pizza shop] which is a parking lot." ***Id.***

Finally, with respect to Section 5328(a)(14), the history of drug or alcohol abuse, the trial court found that Father denied current substance abuse, but acknowledged that it was a problem for him in the past. The court found that, "Father continues to go drinking on the weekends he does not have partial custody of [J.G.] While this is appropriate for partial custody, it is not appropriate for a primary physical custodian, especially in light of the fact that Father's support system, his parents, must work at the pizza restaurant on weekends." Trial Court Opinion, 7/2/14, at 19. Father's testimony supports this finding.

Based upon our careful review of the parties' briefs, the certified record, the notes of testimony, the applicable law, and the trial court opinion, we discern no abuse of discretion or error of law by the trial court in concluding that the statutory presumption in favor of Father was rebutted by clear and convincing evidence by Maternal Grandparents. We defer to the trial court's determinations regarding credibility and weight of the evidence. ***See A.V.***, ***supra***. We conclude that the trial court's consideration of J.G.'s best interests was careful and thorough, and the record evidence supports the trial court's custody decision. Therefore, Father's final issues on appeal do not warrant relief.

Based on the foregoing, we conclude the trial court did not abuse its discretion nor commit an error of law when it entered the underlying custody order. Accordingly, the trial court's July 2, 2014 order is affirmed.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/5/2015