J-A05030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.S., N/B/M C.Y. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPELLANT | |
| v. | |
| J.B. | |
| v. | |
| C.J.B. and R.A.B. | No. 1534 WDA 2016 |

Appeal from the Order Entered September 7, 2016,
in the Court of Common Pleas of Crawford County
Civil Division at No(s): A.D. 2009-313-S

BEFORE:   BENDER, P.J.E., SHOGAN, J. and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED APRIL 11, 2017**

C.S., n/b/m C.Y. ("Mother"), appeals from the order entered on September 7, 2016, that awarded shared legal and physical custody of K.M.B. ("Child"), born in October of 2008, to Mother and C.J.B. ("Paternal Grandmother").[1]  We affirm.

---

[1] Although both Paternal Grandmother and R.A.B. (Paternal Grandfather) were parties in this matter, the trial court's order only named Grandmother and Mother as the parties who would share both legal and physical custody of the Child.

The relevant factual and procedural history was set forth in the trial court's memorandum and order issued subsequent to the custody hearing held on August 23, 2016, and on August 31, 2016. The court stated:

Plaintiff, [C.S.], now by marriage C.Y. … requested a de novo custody trial, contending that the minor child, [K.M.B.,] … should be in her primary care and custody. The Defendant, [J.B. ("Father")] did not participate in the trial. The Intervenors, [C.J.B. and R.A.B. ("Paternal Grandparents")] are currently sharing physical custody of the Child with Mother. The [c]ourt previously allowed the maternal grandparents, [R.H. and M.S.], to withdraw from any further involvement in the case.

Mother and her husband, [C.Y.], testified in support of Mother's petition. Paternal Grandmother testified in support of her assertion that the current order dated December 22, 2015 should remain materially unchanged. The December 22 Order provides that the Child is to be in the shared physical custody of Mother and Paternal Grandparents, alternating physical custody of the Child on a weekly basis beginning on Sundays at 6:00 p.m. Mother's initial position was that she alone should be given primary physical custody of the Child, possibly with weekend periods of partial custody with Father and then such partial custody with Paternal Grandparents as the parents believe would be appropriate. Mother later changed course and suggested that she would be willing to concede that the Paternal Grandparents should have the Child on weekends rather than Father, after learning that Father is currently either homeless at the present time, residing at a shelter known as the Saint James Haven or, alternatively, residing at some temporary residence pending further approval by his parole officer.

The Child was born [in October of 2008]. She was a twin child. Her twin brother, [A.B.,] died on March 5, 2009 when he was approximately 4 months old. Mother was charged with criminal homicide. The criminal information alleged that Mother placed the child down on a pillow on a bed and "then placed another pillow on top of" [A.B.] and then left [A.B.] unattended, during which time he suffocated and died. At the custody trial, Mother said nothing about placing a pillow on top of [A.B.], but did admit that she left the child unattended to take a shower and discovered him nonresponsive when she returned from her

- 2 -

shower. During the custody trial, she offered no explanation as to how [A.B.] could have suffocated, other than to suggest that the child rolled over. No testimony was provided as to where [K.M.B.], the Child of these proceedings, was at the time. Mother [pled] guilty to involuntary manslaughter and was sentenced on February 24, 2010 to a term of imprisonment of 25 months to 120 months.

Mother has given birth to a total of four children. The oldest, [L.], is believed to be around 8 years of age. His father is not in his life to any measurable degree. It is unclear who had custody of [L.] while Mother was incarcerated. The next two children were [Child] and [A.B.]. Mother gave birth to a fourth child, [K.], who she made available for adoption. He is residing in Philadelphia with his adoptive parents. Mother sees [K.] approximately six to eight hours annually under what is believed to be a Post Adoption Contact Agreement.

As noted above, Mother's husband is [C.Y.]. Her marriage to [C.Y.] took place on August 16, 2014. She was previously married to [C.Y.] in February of 2009, however, that marriage ended in divorce approximately five months later due to Mother's admitted infidelity with two other persons, neither of whom are the father of [K.].

While Mother was incarcerated, the Child was in the shared physical custody of the Paternal and Maternal Grandparents who alternated having the Child each week. This continued until Mother was released on parole in the Spring of 2012. Mother was paroled to live with her parents.

To Mother's credit, she applied herself toward the in-home parenting and homemaking programs afforded to her through Crawford County Children and Youth Services ("CYS"). These services were successfully discontinued in May of 2013. Mother is currently a full-time homemaker, caring for her son, [L.], and stepson, [Q.], who is 10 years of age. She relies on her husband for financial support. Her husband is employed with a pipeline company. He works at various job sites and is home on weekends, sometimes only on either Saturday or Sunday. The Maternal Grandparents are now divorced. They relinquished their shared custody [of the Child] to their daughter after her release from prison. Mother testified that her father is closer to the Child than her mother.

. . .

When asked to summarize her reasons why she should have primary physical custody of the Child, Mother indicated the following:

a) She is the Mother;
b) The Child should be with her siblings;
c) The Child should be raised by a parent, rather than a grandparent;
d) There would be more stability for the Child who would not be required to move from one residence to another every week.

Absent from Mother's reasons is any mention of the child's best interests. Mother was apprised of the fact that the Child provided the [c]ourt with testimony of her sincere interest in maintaining the status quo and continuing to be in the shared physical custody of her Mother and her Paternal Grandparents. Mother coldly disregards the Child's feelings, saying simply that the Child would adapt because the Child is so good at adapting to things. Absent from Mother's analysis is any concern whatsoever as to the [e]ffect on the Child if she was suddenly removed from the shared care of the only two people in her life who have always been there for her. Mother's testimonial demeanor lacked empathy for the Child.

Mother's past speaks for itself. Her recent decision to allow the Child to be in the care of Father, without full appreciation for Father's circumstances[,] is consistent with her pattern of behavior.

The Child is delightful but, as the [c]ourt noted during the hearing, troubled by these proceedings. Paternal Grandparents, consistent with their high level of cooperation, have expressed their consent to the present Order. Mother, with little regard for the Child's sensitivity and little appreciation for the care and comfort provided by Paternal Grandparents throughout the life of the Child, insists on eliminating the Paternal Grandparents from any meaningful role in the Child's life.

The success the Child has had in adapting to the death of her twin brother; the adopting-out of her youngest brother; the

- 4 -

incarceration of her Mother; the incarceration of her Father; witnessing her Father's rage against Paternal Grandmother; knowledge of her Father's drug use; the marriage, then divorce, then remarriage of Mother to [CY]; Mother's several boyfriends; the appearance of CYS in-home parenting consultants weekly for a period of one year; and an absent Father who has probably stolen from her and her Grandmother, is all the consequence of the Paternal Grandparents' guidance and not Mother's. To place this Child in the primary care of Mother, given her past history, her occasional poor judgment and her insensitivity, is not warranted.

Trial Court Memorandum (TCM), 9/7/16, at 1-5.[2] Based upon its findings and conclusions, the court awarded joint legal custody of the Child to Mother and Paternal Grandmother and determined that Mother and Paternal Grandmother would share physical custody on a week-on/week-off basis. The court's order also provided that Mother and Paternal Grandmother could arrange custodial time for all holidays; however, if the parties could not agree, they were to abide by the court's schedule included in its order.

Mother filed a timely appeal, and raises the following issue for our review: "Whether the [t]rial [c]ourt abused its discretion in failing to presume that Mother is fit, and therefore, her parenting decisions are made in her child's best interest." Mother's brief at 4.

When presented with child custody matters, we are guided by the following scope and standard of review:

---

[2] In addition to setting forth its factual and procedural discussion, the court also listed the factors enumerated in 23 Pa.C.S. § 5328(a)(1)-(16) of the Child Custody Act, 23 Pa.C.S. §§ 5321-5340 and discussed its findings and its reasoning with regard to each factor.

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.* 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)). Furthermore, we note that:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

*A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674,

677 (Pa. Super. 2004)). Furthermore, we recognize that the Child Custody Act governs all proceedings commenced after January 24, 2011. The specific factors that a court must consider are listed at 23 Pa.C.S. § 5328(a)(1)–(16). **See E.D.**, 33 A.3d at 79-80 (holding that "best interests of the child" analysis requires consideration of all section 5328(a) factors).

Essentially, Mother claims that a presumption exists with regard to custody matters between parents and third parties, as provided for in 23 Pa.C.S. § 5327(b), which states in pertinent part:

> **(b) Between a parent and third party.**—In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

Also, as part of Mother's argument, she contends that "the law presumes parents are fit and, as such, that their parenting decisions are made in their children's best interests." Mother's brief at 16 (citing **Parham v. J.R.**, 442 U.S. 584, 602-03 (1979)). Thus, Mother argues that it was improper for the trial court to analyze the best interest factors listed in 23 Pa.C.S. § 5328 because this "simply allows the [t]rial [c]ourt to overturn Mother's decisions based on the [t]rial [c]ourt's determination of what is in the best interest of the subject minor child, in conflict with the presumption that fit parents act in the best interests of the child, and hinder[s] Mother's ability and constitutionally protected right to make decisions concerning the care, custody, and control of the subject minor child." Mother's brief at 18.

In response to Mother's argument, the trial court recognized that the thrust of Mother's claim rested on the presumption as stated in 23 Pa.C.S. § 5327(b); however, the court explained its reasons for maintaining the shared custody arrangement, stating:

> This [c]ourt finds no hesitation in concluding that clear and convincing evidence does not support allowing Mother to have primary physical care of the Child. If anything, it is the Paternal Grandparents, not Mother, who should have primary physical custody of the Child. The [c]ourt would be inclined to order such if it were not for the fact that this [c]ourt gives great weight to the Child's expression of preference. The Child enjoys her time with her Mother and Paternal Grandparents equally. She perceives that each have much to offer her and that to select one over the other would deprive her of that variety. She may even grasp, at some level, that the presence of her Paternal Grandparents acts as a safety net. Her Paternal Grandparents have been the one constant in her life.

TCM at 5.

Additionally, in the context of its discussion of the various factors, the trial court gave more insight into its reasons for its decision to maintain the equally shared custody arrangement. For example, the court mentioned the death of the Child's twin while in Mother's care. The court also relied heavily on Paternal Grandparents' performing of parental duties throughout the Child's life and its determination that they, rather than Mother, are better able to attend to the Child's daily needs. The court further found that although Mother may not encourage frequent contact with Paternal

Grandparents, the Grandparents would encourage such contact with Mother.

Specifically, with regard to factor (7)[3] the court stated:

> Considering what this Child has gone through in her short life, her reasoned preference must be afforded substantial weight by the [c]ourt. Her Paternal Grandparents have been the only two people in her life who have always been there and have always done the right thing by her. The Child understands this. The Child also understands that she is properly cared for by her Mother and enjoys her time with her siblings. The current arrangement is serving the Child's best interests. To disregard the Child's preference, as Mother requests, would be to introduce more uncertainty in the life of the Child. Such disregard may materially reduce her self-esteem. She expressed herself in unequivocal terms. If the [c]ourt does not provide proper weight in consideration for her preference, it would not be surprising if the Child would be of the opinion that what she thinks and feels does not matter. This [c]ourt is not prepared to allow that to happen.

TCM at 7.

To address Mother's argument relating to the section 5327(b) presumption in favor of a parent in a custody matter as opposed to a third party, we note our Supreme Court's explanation in *Charles v. Stehlik*, 744 A.2d 1255 (Pa. 2000), wherein the Court explained:

> It is axiomatic that in custody disputes, "the fundamental issue is the best interest of the child." *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512, 513 (Pa. 1980). In a custody contest between two biological parents, "the burden of proof is shared equally by the contestants…." *Id.* Yet, where the custody dispute is between a biological parent and a third party, the

---

[3] Factor (7), contained within the list of factors to be considered when awarding custody, directs the court to address "[t]he well-reasoned preference of the child, based on the child's maturity and judgment." 23 Pa.C.S. § 5328(a)(7).

burden of proof is not evenly balanced. In such instances, "the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side." 416 A.2d at 514 (quoting *In re Hernandez*, 249 Pa. Super. 274, 376 A.2d 648, 654 (1977)).

*Id.* at 1258. *See also D.P. v. G.J.P.*, 146 A.3d 204, 212 (Pa. 2016) (reaffirming that the presumption in favor of parents as against third parties remains good law). However, the *Charles* decision further recognizes that the Commonwealth has *not* adopted a standard whereby custody is always awarded to a parent as opposed to a third party except if there is a showing that the parent is unfit. Rather, the *Charles* Court explains:

[T]he biological parent's prima facie right to custody

is not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well[-]being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit.

*Charles*, 744 A.2d at 1259 (quoting *Albright v. Commonwealth ex rel. Fetters*, 421 A.2d 157, 161 (Pa. 1980)). In other words, the best interest of the child trumps the biological parent's right to custody. *Id.*

Here, the trial court so found, determining that the "presumption[] [was] … rebutted by a consideration of the custodial situation during the [C]hild's lifetime, including but not limited to the parents' periods of

incarceration, sporadic irresponsibility, and overall lack of stability." Trial Court Pa.R.A.P. 1925(a) Opinion, 10/19/16, at 2. The court concluded that Mother "ha[d] not consistently provided adequate care for her child...." ***Id.*** Mother has not convinced us otherwise. We therefore conclude that the trial court did not abuse its discretion in granting shared legal and physical custody to Mother and Paternal Grandmother. Accordingly, we affirm the trial court's custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2017